1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Andison Hill and Veronica Hill,                 No. 2:23-cv-00349-KJM-KJN

12                      Plaintiffs,                   ORDER

13          v.

14   City of American Canyon, et al.,

15                      Defendants.

16

17          Andison and Veronica Hill allege several police officers entered and searched their home

18   without a warrant or consent, aiming weapons at them in the process, and detained them outside

19   during the search.  They assert several claims under § 1983 against the officers and the City of

20   American Canyon, where the officers work.  The officers and the City move to dismiss for failure

21   to state a claim.  As explained in this order, that motion is **granted in part with leave to amend**.

22   **I.      BACKGROUND**

23          The Hills were at home with their eight-year-old grandson on a February afternoon a few

24   years ago when they saw several armed police officers at their front door.  Am. Compl. ¶¶ 16–17,

25   23, ECF No. 20.  Without asking, the officers came in, guns drawn and aimed at the elderly

26   couple.  *Id.* ¶ 18.  The officers ordered the couple and their young grandson out of the home, and

27   they kept them outside for half an hour without jackets or shoes until officers had searched every

1    room in the house.  *Id.* ¶¶ 18, 22–24.  Mr. Hill's recent heart surgery made it an especially

2    distressing experience for him.  *Id.* ¶ 21.

3          According to the Hills' complaint, the officers had no warrant, no consent, no reason to

4    suspect any serious or violent crime and no reason to believe they would be met with violence or

5    danger inside the Hills' home.  *See id.* ¶¶ 26–27.  As the Hills were waiting outside, a sergeant

6    explained to them their son, who lived with them at the time but was not home, had been arrested.

7    *Id.* ¶ 19.  He was on probation, and officers had found him with a gun, so they had come to the

8    Hills' home "to perform a probation compliance search."  *Id.*  To be clear, the officers were not

9    looking for the Hills' son or his gun.  He was already in police custody when officers came to

10   their home.  *Id.* ¶ 26.  What or who the officers were looking for in particular is unclear from the

11   Hills' complaint.  *See id.* ¶ 19.  Their search was not confined to the son's room, or even the

12   home's shared rooms; they searched every room, even the Hills' own bedroom.  *Id.* ¶ 22.

13         The Hills claim the officers used excessive force, falsely arrested and detained them and

14   illegally searched their home, all in violation of 42 U.S.C. § 1983 and the Fourth Amendment.

15   *See id.* ¶¶ 28–34 (excessive force); *id.* ¶¶ 35–45 (false arrest); *id.* ¶¶ 46–53 (unlawful search); *id.*

16   ¶¶ 54–62 (unlawful detention).  They assert claims against the individual officers, the supervising

17   sergeants and the City of American Canyon, which employs the officers.  *See id.* ¶¶ 63–68.  The

18   officers and the city now move to dismiss these claims under Federal Rule of Civil Procedure

19   12(b)(6).  *See generally* Mot., ECF No. 23; Mem., ECF No. 23-1.  The motion is fully briefed and

20   the court submitted it without oral arguments.  *See generally* Opp'n, ECF No. 25; Reply, ECF

21   No. 26; Min. Order, ECF No. 27.

22   **II.    DISCUSSION**

23         In response to a Rule 12(b)(6) motion, the court begins by assuming the complaint's

24   factual allegations are true, but not its legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

25   (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The court then determines

26   whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8,

27   which is a context-specific task based on "judicial experience and common sense."  *Id.* at 679.

A.      **Excessive Force (Claim 1)**

When a person alleges officers have used excessive force during an investigation or arrest, courts measure the description of the officers' actions against the Fourth Amendment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam); *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018).  There are three steps to the analysis.  First, the court must consider the "type and amount of force inflicted." *Thompson*, 885 F.3d at 586 (quoting *Espinoza v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)).  Second, the court must assess the "government's interests." *Id.* (quoting *Espinoza*, 598 F.3d at 537).  For example, how serious was the suspected crime?  Did the suspect pose an immediate threat to the officers or public?  Was the suspect resisting arrest or attempting to escape?  *See id.*  And third, the court must decide whether the government's interests justified the force used.  *See id.*  This is an objective test that assesses the officers' conduct "from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In this case, at the first step, many officers did point guns at the Hills.  That was a "high level of force." *Espinosa*, 598 F.3d at 537.  Second, although the government did have an interest in finding and preserving any evidence the Hills' son had violated the terms of his probation, the government's interests in using force to accomplish that end were minimal.  The Hills' son was already in custody without a weapon.  The elderly Hills were suspected of no crime, were not resisting and were not attempting to flee or destroy evidence.  They were compliant and unarmed.  Nothing in the complaint suggests the officers had reasons to fear for their safety or to suspect a violent crime was about to be committed, let alone a crime that required the threat of deadly force.  Officers had virtually no need to use force, if any.  *See, e.g.*, *Thompson*, 885 F.3d at 586–87.  In all, at the third step, the government's interests in searching for evidence of probation violation did not justify their decision to use their weapons and aim them at the Hills.

Defendants argue it was reasonable for officers to aim their weapons at the Hills because the Hills' son had been found with a gun while he was on probation.  *See, e.g.*, Reply at 6.  But the son was not in the home.  He was in custody.  No allegations in the Hills' complaint suggest more illegal weapons hid in the Hills' home, or the Hills were likely to have weapons at the

1   ready.  The allegations do not suggest any reason to fear the Hills or their young grandson were at

2   the time armed or dangerous.  The court must accept the Hills' allegations at this stage and must

3   not draw inferences in the officers' favor.  *See Iqbal*, 556 U.S. at 678–79.  The complaint lays out

4   a plausible claim for excessive force in violation of the Fourth Amendment.

5         The defendant officers also assert qualified immunity.  "Qualified immunity is a judge-

6   made doctrine designed to 'balance[ ] two important interests—the need to hold public officials

7   accountable when they exercise power irresponsibly and the need to shield officials from

8   harassment, distraction, and liability when they perform their duties reasonably.'"  *Haley v. City*

9   *of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (alterations in original) (quoting *Pearson v. Callahan*,

10   555 U.S. 223, 231 (2009)).  The doctrine is intended to "give[ ] government officials breathing

11   room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-*

12   *Kidd*, 563 U.S. 731, 743 (2011).

13         Courts use a two-part test to decide whether officers are protected from liability under

14   § 1983 by qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson*, 555 U.S.

15   at 232.  The first part requires the court to "decide whether the facts that a plaintiff has alleged or

16   shown make out a violation of a constitutional right."  *Pearson*, 555 U.S. at 232 (citing Fed. R.

17   Civ. P. 12, 50, 56; *Saucier*, 533 U.S. at 201) (internal citations omitted).  The second requires the

18   court to "decide whether the right at issue was 'clearly established' at the time of defendant's

19   alleged misconduct."  *Id.* (citing *Saucier*, 533 U.S. at 201).  Courts may decide which of these

20   parts they will analyze first.  *Tolan*, 572 U.S. at 656 (citing *Pearson*, 555 U.S. at 236).  The court

21   already has determined the complaint states a claim for excessive force, which satisfies the first

22   part of the test, so the question is whether the relevant law was "clearly established" in February

23   2021, when the search occurred.

24         The Ninth Circuit and other federal courts of appeals had held many times before 2021

25   that officers use unconstitutionally excessive force when they aim their weapons at people who

26   are not suspected of violent crimes, who do not pose a threat, who have complied with the

27   officers' instructions, who are not resisting and who are not attempting to flee—especially when

28   those people are elderly or young.  *See, e.g.*, *Thompson*, 885 F.3d 586–87; *Espinosa*, 598 F.3d at

1    537–38; *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009); *Hopkins v. Bonvicino*, 573 F.3d

2    752, 776–77 (9th Cir. 2009); *Tekle v. United States*, 511 F.3d 839, 846 (9th Cir. 2007); *Robinson*

3    *v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc); *Baker v. Monroe Township*, 50

4    F.3d 1186, 1193 (3d Cir. 1995).

5         In some of these cases, the potential threats to officers were greater than in this case, and

6    even then officers were not justified in aiming their weapons.  For example, in *Espinosa*, decided

7    in 2010, police received a report of an open apartment door from a tipster who thought the

8    apartment looked like a "drug house."  598 F.3d at 532.  When officers arrived, one of them

9    found a bloody shirt inside.  *Id.*  He could not tell whether the blood was old or new, and officers

10   saw nothing else suspicious on the first floor.  *See id.*  But on the second floor, officers found a

11   man with a knife.  *Id.* at 532–33.  He surrendered to them peacefully.  *See id.*  The officers then

12   heard noises in the attic above.  *Id.* at 533.  One officer went up and found a man.  She held him

13   at gunpoint.  *See id.*  This was excessive force.  Although the officers had found a bloody shirt

14   and a man with a knife, the level of threat was "low": there was only one way out of the attic, so

15   the attic's occupant had no chance of escape, and officers had no reason to suspect danger from

16   the man where he was.  *See id.* at 533, 537–38.

17        The Circuit's decision in *Thompson*, decided in 2018, is a similar example.  An officer

18   had stopped a man in his car for suspected traffic violations, and the man produced no drivers'

19   license.  885 F.3d at 584.  The officer then discovered the man's license was suspended, and he

20   saw the man had previously been convicted of a felony, including of unlawfully possessing a

21   firearm.  *Id.*  So the officer removed the man from the car and patted him down.  *Id.* at 585.

22   Finding no weapons, he sat the man on the hood of his patrol car and radioed for backup, then

23   began searching the man's car.  *Id.*  He found a loaded revolver.  *Id.*  He decided to arrest the man

24   for unlawfully possessing that weapon.  *Id.*  By this time a second officer had arrived and was

25   watching over the man, who was ten to fifteen feet from the first officer and the revolver.  *Id.*  On

26   the first officer's signal, the second drew his gun.  *Id.*  By one account—which the court was

27   required to accept at that stage of the case—the first officer then aimed his weapon at the man's

28   head and threatened to kill him if he did not surrender.  *Id.*  This was excessive force.  The man

1   was suspected of driving without a license and unlawfully possessing a gun, which were

2   "potential crimes of low and moderate severity, respectively," and the man had already been

3   searched, had no weapon, was compliant, did not resist or attempt to flee and would have had to

4   evade or overcome both officers before he could get to the revolver ten or fifteen feet away in his

5   car.  *Id.* at 586–87.

6        If the officers in *Espinosa* and *Thompson* were not reasonable in aiming their weapons—

7   in *Espinosa* after finding a bloody shirt and a man with a knife, and in *Thompson* after finding a

8   revolver in a convicted felon's car—then for purposes of the current motion, it was clearly

9   established in 2021 that the officers were unreasonable in aiming their weapons at the Hills in this

10  case.  The court denies the motion to dismiss the first claim.

11       **B.     Unlawful Entry and Search (Claim 3)**

12       The Hills allege the search also violated the Fourth Amendment.  "It is a basic principle of

13  Fourth Amendment law that searches and seizures inside a home without a warrant are

14  presumptively unreasonable."  *Smith v. City of Santa Clara*, 876 F.3d 987, 991 (9th Cir. 2017)

15  (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  The Supreme Court has made a few

16  exceptions to this general rule, including for those on probation: warrantless searches of a

17  probationer's home can be reasonable and thus constitutional.  *See United States v. Knights*, 534

18  U.S. 112, 121 (2001).  A warrantless probation search can of course have consequences for other

19  residents who are not on probation, such as a roommate or a family member, as in this case.  For

20  these third parties, the court must decide whether the search was "reasonable under the totality of

21  circumstances."  *Smith*, 876 F.3d at 994.  The court balances the intrusion on the innocent third

22  person's privacy against the government's legitimate interests.  *See id.*

23       The Hills and the officers all rely on the Ninth Circuit's decision in *Smith*.  *See* Opp'n at

24  5–6; Reply at 2–3.  In *Smith*, a probationer was involved in a violent vehicle theft.  876 F.3d at

25  989.  Officers investigating the crime went to the address she had listed, hoping to find her, but

26  instead found only her mother.  *Id.*  The mother, who lived in the home, refused to let the officers

27  in, but they forced their way in and searched the house.  *Id.*  The Ninth Circuit held the search

28  was reasonable under the circumstances: the probationer had previously committed a serious

1  crime; police had probable cause to believe she had been involved in a new crime, i.e., the violent

2  vehicle theft; she was still at large and police had probable cause to believe she lived at the

3  address. *See id.* at 994, 995–96.  The court stressed its conclusion was limited to the facts of that

4  case. *Id.* at 994.

5        This case is unlike *Smith*.  If the court assumes the Hills' allegations are true, as it must at

6  this stage, the officers' search was not reasonable under the circumstances.  The Hills' son was

7  already in police custody when officers came to the Hills' home, he was not suspected of a

8  violent crime, no allegations suggest officers would find contraband or evidence of another crime

9  at the Hills' home and no allegations suggest a search was necessary to protect the public from

10  gun violence or a similar danger.  Officers also searched the entire home, not just the room where

11  the Hills' son was staying, including the Hills' own bedroom.  The intrusion on the Hills' privacy

12  was great.  It outweighed the government's interests in protecting the public.

13        The officers argue their search was justified by their need to protect the public from illegal

14  guns.  They hypothesize the Hills' son might have received his gun from someone else living in

15  the Hills' home, and they argue a search was necessary to ensure there were no more illegal guns

16  in the home.  *See* Reply at 3.  These arguments rely on speculation with no foundation in the

17  complaint's allegations.  The officers also argue the Hills' allegations are "consistent with" a

18  lawful "protective sweep."  Reply at 3 (quotation marks omitted).  It is irrelevant at this early

19  stage whether the complaint's allegations are "consistent with" a theory, even a plausible theory,

20  that would exonerate the officers.  "If there are two alternative explanations, one advanced by

21  defendant and the other advanced by plaintiff, both of which are plausible," then the "complaint

22  survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

23  2011).

24        The officers also assert qualified immunity to this claim.  *See* Mot. at 10.  The Hills do not

25  cite another case in which a federal court of appeals has found a similar search was

26  unconstitutional.  Neither do the officers.  The court has located none; the court's independent

27  research suggests instead the law was murky at the time.  *See, e.g.*, *Sharp v. County of Orange*,

28  871 F.3d 901, 918–19 & nn. 9–10 (2017) (listing several "difficult legal questions" that arise in

1    cases about probation compliance searches and holding officers were protected by qualified

2    immunity); *see also Reed v. Sheppard*, 321 F. Supp. 3d 429, 450–51 (W.D.N.Y. 2018)

3    (summarizing conflicting persuasive authority and finding the law unsettled). The circuit's

4    decisions also suggest the government has a greater interest in conducting probation compliance

5    searches when the probationer was convicted of a "violent" crime, but the circuit has not

6    explained clearly what crimes are "violent" in this context. *See Gomez v. City of Los Angeles*,

7    No. 19-4718, 2020 WL 4032673, at *4 (C.D. Cal. Mar. 27, 2020) (collecting authority and

8    granting qualified immunity).

9         The court cannot conclude the officers violated clearly established law at this juncture.

10   Based on the current pleadings, they are entitled to qualified immunity. The court dismisses the

11   third claim on these grounds, with leave to amend if possible within the confines of Rule 11. *See*

12   *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (holding leave to amend should be

13   granted unless district court "determines that the pleading could not possibly be cured by the

14   allegation of other facts").

15        **C.      False Arrest and Unlawful Detention (Claims 2 and 4)**

16        The Hills allege the officers also deprived them of constitutional rights in violation of

17   § 1983 by detaining and arresting them during the search. At the most basic level, there is no

18   doubt an officer would violate the Fourth Amendment by arresting a person without probable

19   cause, and a person who has been arrested without probable cause can pursue a claim under

20   § 1983. *See, e.g.*, *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001);

21   *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992). The Fourth Amendment also

22   forbids all unreasonable "seizures." Even a short detention that is not technically an "arrest" can

23   be a "seizure," so if it was not "reasonable," then it was not constitutional. *See, e.g.*, *Michigan v.*

24   *Summers*, 452 U.S. 692, 696 (1981). The defendants' motion therefore poses several related

25   questions: Do the pleadings support the conclusion the Hills were detained? If so, was their

26   detention reasonable? And were they also arrested? If so, was the arrest without probable cause?

27   The officers do not dispute they detained the Hills during the search, *see* Mem. at 6, so the court

28   begins with the detention and whether it was reasonable.

1          Over the years, federal courts have held that some detentions are categorically reasonable

2    and so do not deprive people of their Fourth Amendment rights.  For example, a routine border

3    search is "by its very nature reasonable."  *United States v. Guzman-Padilla*, 573 F.3d 865, 877

4    (9th Cir. 2009) (quoting *United States v. Dobson*, 781 F.2d 1374, 1376 (1986)).  Officers may

5    also detain the occupants of a house while they are executing a search warrant for contraband

6    within it.  *See Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Summers*, 452 U.S. at 705.  And most

7    importantly for this case, the Ninth Circuit held in 2009 in *Sanchez v. Canales* that "officers may

8    constitutionally detain the occupants of a home during a parole or probation compliance search."

9    574 F.3d 1169, 1173 (9th Cir. 2009), *overruled in part by United States v. King*, 687 F.3d 1189

10   (9th Cir. 2012) (en banc) (per curiam).[1]

11          As explained in the previous section, the search of the Hills' home during a probation

12   compliance search was unreasonable.  Because the defendant officers are nevertheless entitled to

13   qualified immunity from that claim, the Hills' detention claim could be viable only if this court is

14   not bound by the Ninth Circuit's decision in *Sanchez*, which held it is constitutional for officers to

15   "detain the occupants of a home during a parole or probation compliance search."  574 F.3d at

16   1173.  The Hills argue it is not, because in *Sanchez*, the court assumed the officers had probable

17   cause to believe the probationer was at home.  *See* Opp'n at 4, 7–8.  In the Hills' case, by

18   contrast, officers knew the Hills' son was not in their home, as he was already in police custody.

19   That difference could be important, depending on the specific conditions of their son's probation

20   agreement.  For example, if he had agreed officers could search his house for his person, then the

21   officers probably could not have relied on that condition.  But if he also had agreed officers could

22   also search his property and residence, then it might not matter whether he was home.  Without

23   more information about the terms of the probation agreement, the court cannot conclude the

24   unlawful detention claim is viable.  For that reason, the Hills have not shown this case can be

25   meaningfully distinguished from *Sanchez*, so their unlawful detention claim must be dismissed.

---

[1] In *King*, the Circuit overruled *Sanchez* and other similar cases "to the extent they hold that there is no constitutional difference between probation and parole for purposes of the fourth amendment."  687 F.3d at 1189 (citation and quotation marks omitted).  The court's decision on the pending motion does not turn on that distinction or the overruled portions of *Sanchez*.

1    The Hills also contend the detention was unreasonable because officers kept them outside

2    in the cold without jackets or shoes for half an hour and because Mr. Hill had recently undergone

3    surgery.  Opp'n at 8.  The Supreme Court has held that "[a]n officer's authority to detain incident

4    to a search is categorical; it does not depend on 'the quantum of proof justifying detention or the

5    extent of the intrusion to be imposed by the seizure.'"  *Muehler*, 554 U.S. at 98 (quoting

6    *Summers*, 452 U.S. at 705 n.19).  The force used, duration and conditions of a person's detention

7    could show officers violated a different constitutional protection, such as the prohibition against

8    unreasonable force, *see id.*, as summarized above.  This order does not preclude the Hills from

9    asserting in an amended complaint that defendants deprived them of constitutional or other rights

10   by keeping them outside in the cold without jackets and shoes for half an hour, especially in light

11   of Mr. Hill's recent surgery.

12   The next question is whether the detention was actually an arrest.  The parties have not

13   cited cases in which courts have considered whether a detention during a probation or parole

14   search was a de facto arrest.  In other circumstances, such as "*Terry* stops" and border searches,

15   the Supreme Court and Ninth Circuit have considered whether a reasonable person would have

16   concluded from the circumstances the stop was temporary, and thus merely a detention, or

17   indefinite, and thus an arrest.  *See, e.g.*, *Guzman-Padilla*, 573 F.3d at 883–85 (citing *Terry v.*

18   *Ohio*, 392 U.S. 1 (1968)); *United States v. Bravo*, 295 F.3d 1002, 1010 (9th Cir. 2002).  The

19   Hills' allegations do not show a reasonable person in their situation would have expected

20   indefinite detention.  They do not allege they were handcuffed or otherwise physically restrained.

21   A sergeant also explained the officers were detaining them during a probation compliance search,

22   Am. Compl. ¶¶ 19–20, which suggested the Hills would be free when the search was complete.

23   For these reasons, the Hills' claims for unlawful detention and arrest are dismissed for

24   failure to state a claim under Rule 12(b)(6).  Because the Hills' allegations do not give rise to a

25   plausible claim of constitutional violations for unlawful detention or arrest, the court does not

26   reach the officers' assertion of qualified immunity to these claims or consider what was clearly

27   established law at the time.  *See Pearson*, 555 U.S. at 232.  The court grants leave to amend the

28   unlawful detention and arrest claims if possible within the confines of Rule 11.

1        **D.      Supervising Sergeants' Liability and *Monell* Liability**

2            Two of the officers at the home were supervising sergeants, Schneider and Olsen.  *See*

3   Am. Compl. ¶¶ 4, 6.  They contend they are not liable for their subordinates' actions.  *See* Mem.

4   at 11–12.  The Ninth Circuit has "long permitted plaintiffs to hold supervisors individually liable

5   in § 1983 suits when culpable action, or inaction, is directly attributed to them."  *Starr*, 652 F.3d

6   at 1205.  "[A] plaintiff may state a claim against a supervisor for deliberate indifference based

7   upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her

8   subordinates."  *Id.* at 1207.  In *Maxwell v. County of San Diego*, for example, the Ninth Circuit

9   denied summary judgment to two supervising officers because they were on the scene of an

10  allegedly unlawful detention and assault and did not intervene.  708 F.3d 1075, 1086 (9th Cir.

11  2013).  The Hills have stated a claim of excessive force, and they allege the two sergeants

12  participated in the search and directed it.  *See* Am. Compl. ¶¶ 18, 64, 66.  At this early stage,

13  these allegations suffice to withstand the sergeants' motion.

14          The Hills also assert a claim against the City.  Under *Monell v. Department of Social*

15  *Services*, a municipal defendant can be liable under § 1983 only for its own polices, customs or

16  practices.  *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)

17  (citing 436 U.S. 658, 691 (1978)).  To state a claim against a municipality under § 1983, a

18  complaint must include more than "a bare allegation that government officials' conduct

19  conformed to some unidentified policy or custom."  *Id.* at 637.  It must include "sufficient

20  allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

21  effectively."  *Id.* (quoting *Starr*, 652 F.3d at 1216).  The Hills do not specify the policies, customs

22  or practices behind their claim against the city.  This claim is dismissed with leave to amend if

23  possible within the confines of Rule 11.  *See id.* at 637–38.

24  **III.   CONCLUSION**

25          The motion to dismiss is **granted in part with leave to amend**:

26      •   Claims 2, 3 and 4 are dismissed with leave to amend.

27      •   The *Monell* claim against the City of American Canyon is dismissed with leave to

28          amend.

1   • The motion is otherwise denied.

2   Plaintiffs must file any amended complaint **within twenty-one days**.

3   This order resolves ECF No. 23.

4   IT IS SO ORDERED.

5   DATED:  January 23, 2024.

CHIEF UNITED STATES DISTRICT JUDGE